# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| THERESA HEGGEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 1:16-cv-00440-TLS-SLC |
| MAXIM HEALTHCARE SERVICES, INC., | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Before the Court in this employment-related case is a motion for sanctions filed by Defendant Maxim Healthcare Services, Inc. ("Maxim"), asking that the Court dismiss Plaintiff Theresa Heggen's ("Heggen") complaint as a sanction due to Heggen's alleged dishonesty under oath and destruction of evidence. (DE 35). The motion is ripe for ruling. (DE 44; DE 45; DE 47).

For the following reasons, Maxim's motion for sanctions will be granted to the extent that a lesser sanction in the form of a monetary penalty will be imposed; Maxim's request for the sanction of dismissal, however, will be denied.

### *A. Factual and Procedural Background*

Heggen filed this case against her former employer, Maxim, on December 29, 2016, advancing claims of sexual harassment and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*. (DE 1). Maxim is a provider of temporary medical staffing, home health care, and wellness services, and Heggen was employed by Maxim as a home health care aide. (DE 36 at 1).

The Court held a preliminary pretrial conference on March 9, 2017, setting a discovery deadline of September 29, 2017, and discovery then commenced. (DE 15). On May 26, 2017, Heggen responded to Maxim's First Set of Interrogatories (DE 36-9) and First Request for Production (DE 36-1), and on August 11, 2017, Maxim conducted Heggen's deposition (DE 36-2).

On October 25, 2017, Heggen's prior counsel filed a motion to withdraw, which the Court granted after a hearing on the motion. (DE 27-DE 29). New counsel appeared on Heggen's behalf on November 22, 2017. (DE 30).

On December 12, 2017, Maxim filed the instant motion for sanctions, seeking the sanction of dismissal due to Heggen's alleged dishonesty under oath and destruction of certain cell phone recordings that are material evidence in this case. (DE 35).

### B. Applicable Legal Standard

The Seventh Circuit Court of Appeals has "construed the sanctioning power conveyed by [Federal Rule of Civil Procedure] 37 to extend to instances of a party hiding evidence and lying in [her] deposition." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citation omitted). "Apart from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Id*. (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991)). "Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (citations omitted); *see also Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005).

"A court also has the inherent power to assess sanctions for the failure to preserve or produce [evidence.]" *United States v. Dish Network, L.L.C.*, 292 F.R.D 593, 599-600 (C.D. Ill. Apr. 24, 2013) (citation omitted); *see Bryant v. Gardner*, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. Nov. 21, 2008) ("The Court has discretion to sanction a party for spoliation of evidence." (citation omitted)). "A party has a duty to preserve evidence over which it has control and reasonably knows or could foresee would be material to a potential legal action." *Bryant*, 587 F. Supp. 2d at 967-68 (citations omitted); *see also ChampionsWorld, LLC v. U.S. Soccer Fed'n*, 276 F.R.D 577, 582 (N.D. Ill. Aug. 17, 2011) (citation omitted). "Sanctions [for spoliation of evidence] include awarding reasonable expenses, attorney fees, barring evidence or arguments, permitting adverse inferences, and dismissing claims or entering default judgment." *Bryant*, 587 F. Supp. 2d at 968 (citations omitted); *see Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) ("In order to draw an inference that the missing documents contained information adverse to the defendants, [the plaintiff] must demonstrate that the defendants intentionally destroyed the documents in bad faith." (citations omitted)).

"[A]n award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). When a court enters a dismissal as a discovery sanction, "the court must find that the party against whom sanctions are imposed displayed willfulness, bad faith or fault." *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001) (citations omitted); *see Secrease*, 800 F.3d at 401 ("A district court has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." (citations and internal quotation marks omitted)); *see also Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009). The Seventh Circuit has cautioned

3

that a court must use its dismissal power sparingly, as it is a "harsh sanction" which should "be employed only as a last resort." *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003) (citation omitted).

*C. Analysis*

Maxim requests that this case be dismissed as a sanction for Heggen's purported dishonesty under oath and destruction of recordings from her cell phone. Maxim contends that Heggen lied under oath about three topics: her employers prior to Maxim, the circumstances of her departures from employers after Maxim, and her litigation history. Heggen responds that sanctions are not warranted because any issues concerning her credibility can be challenged at trial, and because some of the missing recordings have since been located at the Fort Wayne Metropolitan Human Relations Commission ("METRO"). The Court will address each of Maxim's reasons for requesting sanctions in turn.

1. Heggen's Employers Prior to Maxim

In response to Maxim's First Request for Production, Heggen identified her employers prior to Maxim as "Brightstar and Lutheran Hospital." (DE 36-1 at 7). Then at her deposition, Heggen testified under oath that she worked for "Rescare" prior to Maxim. (DE 36-2 at 5).

Maxim, however, has since learned through a discovery request to the Indiana Department of Workforce Development that Heggen worked for Interim Health Care ("Interim") immediately prior to joining Maxim. After reviewing records it obtained from Interim, Maxim contends that the circumstances of Heggen's departure from Interim are "strikingly similar" to Heggen's tumultuous tenure at Maxim, including that a patient's medications went missing, Heggen then tested positive for the missing medications on a drug test, and Heggen failed to

4

return to work after the complaint. (DE 36 at 4-5). Maxim argues that Heggen was obviously attempting to hide her employment at Interim by lying under oath about her prior employers.

In an affidavit submitted with her response brief, Heggen admits that she also worked at Interim prior to her employment with Maxim. (DE 45-4 ¶ 1). She contends, however, that she did not intentionally omit naming Interim as one of her prior employers, but that she worked for several home health care providers and sometimes more than one at a time. (DE 45-4 ¶ 2). She also disputes that she failed any drug test at Interim. (DE 45-4 ¶ 2).

The Court views Heggen's explanation, to the extent she offered one, lacking in credibility. Interim was Heggen's most recent employer prior to Maxim, and thus, it seems unlikely that she would simply forget to include Interim when identifying her prior employers, particularly where the circumstances of her departure from Interim bore similarity to her departure from Maxim. Rather, Heggen's omission appears intentional. Therefore, sanctions in some form are warranted against Heggen for her failure under oath to name Interim when asked to identify her employers prior to Maxim.

2. <u>The Circumstances of Heggen's Departures from Employers After Maxim</u>

At her deposition, Heggen identified Help at Home, Inc. ("HHI"), and "Ms. Patricia" as her employers after Maxim. Heggen stated under oath that she chose to leave these employers "voluntarily" because the two clients with whom she worked were going into a nursing home. (DE 36-2 at 16, 18).

Maxim points out, however, that HHI's records show that HHI terminated Heggen after she refused to go back to HHI's office to discuss a complaint by a client in Heggen's care that Heggen stole $300 from her. (DE 36 at 5; DE 36-6 at 3-12). Maxim also states that a legal

representative for Ms. Patricia notified Maxim that Heggen was terminated for her mismanagement of Ms. Patricia's financial assets. (DE 36 at 6).

Heggen disputes the allegations that she was terminated by HHI or Ms. Patricia, as well as the allegations that she committed theft while at HHI. (DE 45-4 ¶ 2). As to HHI, its records show that after Heggen was terminated after she refused to come in to issue a statement responding to the client's complaint. (DE 36-6 at 4). Maxim has not submitted any records from Ms. Patricia.

The Court considers it possible, perhaps, that Heggen's testimony at her deposition that her departure from HHI was "voluntary" could be based on Heggen's view that she voluntarily left HHI when she failed to come back to HHI and issue a statement about the client's complaint. That is, Heggen may take the view that she quit HHI before it could fire her. Because there are no records submitted from Ms. Patricia, the terms of Heggen's departure from that position are subject to dispute. As such, the Court finds that sanctions are not warranted based on Heggen's testimony about the circumstances of her departures from her employers after Maxim.

3. Prior Litigation

Maxim also contends that Heggen lied under oath about her litigation history. During her deposition, Heggen was asked whether her lawsuit against Lutheran Hospital was the only case she had been involved in before the instant case, and Heggen responded, "Yes. That's my recollection." (DE 36-2 at 4).

Maxim points out, however, that a search of the online court docket for the State of Indiana reveals at least 32 actions in which Heggen was a plaintiff or a defendant, including a case in which Heggen was charged with conversion. (DE 37-7). Maxim argues that Heggen

sought to hide her litigation history in order to prevent Maxim from investigating it. (DE 36 at 7).

Heggen responds in her affidavit that she thought the question posed to her during her deposition concerned whether she had been involved in any other *employment* litigation. (DE 45-4 ¶ 2). She stated that she did not try to intentionally hide any other matters that she had been involved in. (DE 45-4 ¶ 2).

The Court observes that Heggen's litigation history involves primarily small claims, mortgage foreclosure, and ordinance infractions. While Maxim makes much of the fact that Heggen was unlikely to forget a conversion charge, it is certainly feasible that Heggen did not view Maxim's question at her deposition to pertain to criminal charges that were later dismissed, or these other small claims matters. Therefore, the Court finds Heggen's explanation—that she viewed the question to pertain to employment-related litigation—reasonable. Accordingly, sanctions are not warranted based on Heggen's response under oath to Maxim's question about her litigation history.

   4. <u>Destruction of the Cell Phone Recordings</u>

Maxim also contends that Heggen destroyed key evidence in at least three different ways and that this, too, provides grounds for dismissal of this action as a sanction. In that regard, Heggen testified at her deposition that she made about seven recordings of unidentified Maxim employees. (DE 36-2 at 6-8). She cited these recordings as evidence supporting her claims against Maxim, both at her deposition and in her written discovery responses. (DE 36-2 at 6-8, 10-11, 20, 24; DE 36-9 at 4).

Heggen testified at her deposition that the Equal Employment Opportunity Commission

7

("EEOC") has the recordings. (DE 36-2 at 6-7; *see also* DE 45-4 ¶ 3). She testified that she deleted the recordings from her cell phone only after she played them for her attorneys and sent them to the EEOC, because she "didn't want them to have [her] phone lost and have them be out there." (DE 36-2 at 7). She testified that she had emailed the recordings to the EEOC, but that she could not find any copy of the email transmitting the recordings. (DE 36-2 at 13-14). Then at some point, Heggen performed a factory reset of her phone that apparently deleted all of the data stored on it, including the recordings. (DE 36-2 at 26-27).

Heggen admitted during her deposition that she understood that she should not destroy an original record that could be evidence in this lawsuit. (DE 36-2 at 26). Maxim argues, then, that there is no doubt Heggen's destruction of the recordings was intentional. Maxim states that it has tried to obtain the recordings from the EEOC and METRO, but "neither . . . had any such recordings." (DE 36 at 7).

Heggen responds in her affidavit that she did not destroy the recordings, but rather she preserved the recordings by sending them to the EEOC/METRO. (DE 45-4 ¶ 3). She states that she was worried about having the recordings on her phone, and thus, that she delivered them to her prior attorneys and to the EEOC/METRO. (DE 45-4 ¶ 3). She explains that after preserving the recordings in that manner, she "thought it was okay to get rid of them[.]" (DE 45-4 ¶ 3). She also stated that her phone was an older Apple model that basically had "broke[n] down," and that she performed a factory reset in an effort to get it working again. (DE 45-4 ¶ 3). As such, Heggen argues that sanctions are not warranted, and certainly not the harsh sanction of dismissal of her case.

Heggen further emphasizes that her current counsel located three of the missing

8

recordings at METRO within one month of her counsel's appearing in this action, and thus, she does not understand why Maxim was unable to obtain them too. (DE 45-4 ¶ 3; DE 45-6; DE 45-1 ¶ 6-8; DE 45 at 4). Heggen submitted transcripts of these recordings with her response brief, and she also provided a copy of the recordings and transcripts to Maxim. (DE 45-5; DE 45 at 4).

In reply, Maxim points out that only three of the seven missing recordings have been located, and Heggen offers no explanation for the other missing recordings. (DE 47 at 1-2). Maxim emphasizes that it sought the recordings from Heggen for months through traditional discovery and that it did not have the recordings when it deposed Heggen, resulting in prejudice to Maxim. (DE 47 at 3). Maxim argues that there is a significant difference between original recordings and copies of recordings. (DE 47 at 2); *see McWilliams v. McWilliams*, No. 06 C 3060, 2006 WL 3332879, at *2 (N.D. Ill. Nov. 15, 2006) ("[T]he 'best evidence' . . . is the original recording." (citation omitted)). Maxim articulates that what Heggen submitted appears to be at least two different layers of recorded conversations: "an ongoing face-to-face interaction between individuals who are supposedly simultaneously listening to and participating in a different interaction by telephone, all recorded on top of each other." (DE 47 at 2).

Maxim further emphasizes that the located recordings are copies, which deprives it of an opportunity to delve into the original metadata of the recordings. (DE 47 at 2). Maxim further observes that while the original recordings were made on an iPhone, the files Heggen produced are in 3GP format, which is a format generally used by Android phones, raising further questions. (DE 47 at 3). Maxim argues that given all of the foregoing factors, Heggen's intentional destruction of the recordings, and the resulting prejudice to Maxim, the serious sanction of dismissal is warranted in this instance.

9

Having considered the parties' positions, there is no dispute that Heggen had a duty to preserve the recordings, as she knew the recordings' relevancy to this legal action when she deleted them. *See Banks v. Enova Fin.*, No. 10 C 4060, 2012 WL 12539830, at *4 (N.D. Ill. July 10, 2012) ("[A] person or entity has an ongoing duty to preserve evidence over which it has control and reasonably knows or can foresee would be material—and thus relevant—to a potential legal action." (citation omitted)). To determine whether sanctions are appropriate, the Court must determine whether Heggen "acted willfully, in bad faith, or if [she was] merely at fault." *Id*. (citation omitted).

"To find bad faith, a court must determine that the party intended to withhold unfavorable information." *Id*. (citations omitted); *see Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). Heggen admits that she intentionally deleted the recordings, but emphasizes that she did so only after she thought she had preserved them by playing them for her lawyers and sending them to the EEOC. As such, there is no evidence that Heggen deleted the original recordings with the intent "to withhold unfavorable information." *Banks*, 2012 WL 12539830, at *4 (citations omitted). In fact, according to Heggen, the recordings contain information favorable to *her*, rather than Maxim. *See Norman-Nunnery*, 625 F.3d at 428 ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information." (citations omitted)); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (same).

Nevertheless, "[f]ault may be evidenced by negligent actions or a flagrant disregard of the duty to preserve potentially relevant evidence." *Banks*, 2012 WL 12539830, at *4 (citations omitted). "A party fulfills its duty to preserve evidence if it acts reasonably." *Id*. (citation

10

omitted). The Court finds that Heggen acted negligently when she deleted the original recordings from her cell phone, performed a factory reset of her phone, and then either lost or deleted the email trasmitting the recordings—all during the pendency of this suit. Accordingly, sanctions in some form are warranted against Heggen for her negligence in failing to preserve all of the original recordings.

     5. <u>Type of Sanctions to be Imposed</u>

As concluded above, some form of sanctions are warranted against Heggen for her failure under oath to disclose Interim as a prior employer and for her destruction of the original cell phone recordings. A sanction for discovery abuse must be "a proportionate response to the circumstances." *Watkins v. Nielsen*, 405 F. App'x 42, 44 (7th Cir. 2010) (citations omitted).

The draconian sanction of dismissal is not presently warranted here.[1] Rather, the present circumstances warrant the imposition of lesser sanctions in the form of a monetary penalty—that is, ordering Heggen to pay the reasonable expenses, including attorney's fees, that Maxim incurred in filing the motion to compel. *See* Fed. R. Civ. P. 37(b)(2)(C). The Court has no reason, at least at this juncture, to conclude that the imposition of this monetary penalty would be fruitless. *See Watkins*, 405 F. App'x at 46 (stating that the court should first explore the effectiveness of lesser sanctions before imposing the harsh penalty of dismissal). Additionally, a spoliation charge to the jury concerning the recordings may be appropriate should this case proceed to trial. *See Banks*, 2012 WL 12539830, at *7 (explaining that a spoliation charge

---

[1] Because of the harsh nature of the sanction of dismissal, it is most prudent not to dismiss a case unless the non-complying party has been sufficiently warned that further intransigence warrants dismissal. *See Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665 (7th Cir. 2006). To date, Heggen has not received such a warning from this Court.

11

permits, but does not require, a jury to presume that the lost evidence is both relevant and favorable to the innocent party).  That possible sanction, however, should be raised by Maxim in pretrial motions, as the Court finds it premature to impose such a sanction at this juncture.

In sum, Maxim's motion for sanctions will be granted in part in that Heggen will be ordered to pay the reasonable expenses, including attorney's fees, that Maxim incurred in filing the motion to compel, pending Maxim's submission of a supporting affidavit.  Heggen is warned that any additional discovery transgressions may result in further sanctions against her, up to and including dismissal of this action.

### *D. Conclusion*

For the foregoing reasons, Maxim's motion for sanctions (DE 35) is GRANTED IN PART in that Heggen is ORDERED to pay the reasonable expenses, including attorney's fees, that Maxim incurred in filing the motion for sanctions, pending Maxim's submission of a supporting affidavit.  The Court will also consider a spoliation instruction upon a pretrial motion by counsel should this case go to trial.  The motion for sanctions (DE 35) is OTHERWISE DENIED.  Heggen is duly WARNED that any additional discovery transgressions may result in further sanctions against her, up to and including dismissal of this case.

SO ORDERED.

Entered this 27th day of April 2018.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge